UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

LARRY RICHARDSON,

        Plaintiff,        Case No. 2:12-cv-435

v.        Honorable Robert Holmes Bell

CATHERINE BAUMAN, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. On January 3, 2013, this Court ordered service of Plaintiff's complaint on Defendants Catherine Bauman, Jacquiline Nadeau, D. P. Mansfield, Duncan MacLaren, Fredrick Robinson, T. Swift, Patricia Caruso, Scott Spader, Jennifer Granholm, Jeri-Ann Sherry, Unknown McBurney, Unknown Contreras, D. Lesatz, Unknown Rutter, R. Beaulieu, Mitchell Perry, Unknown Konrad, Robin Gilbert, Jeff Heeman, W. Trierweiler, Unknown Carberry[1], and J. Boynton.

On April 23, 2013, Defendants Bauman, Nadeau, Mansfield, MacLaren, Robinson, Swift, Caruso, Spader, Sherry, McBurney, Contreras, Lesatz, Rutter, Beaulieu, Perry, Konrad, Gilbert, Heeman, Trierweiler, Carberry, and Boynton filed a motion for summary judgment (docket #39) on the ground that Plaintiff failed to exhaust his available administrative remedies. In addition, Defendant Granholm filed a motion to dismiss (docket #42). Plaintiff filed responses to the motions

---

[1] Named as Carbury in the complaint.

(docket #45 and #49) and an affidavit (docket #46). Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be denied. In addition, I recommend that Defendant Granholm's motion to dismiss be granted.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W.

3

SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff alleges that while he was housed at the Kinross Correctional Facility (KCF), he was approached by members of the gang MS-13. On January 30, 2009, Plaintiff met with officials at KCF and requested protection. Plaintiff's request was denied because he could not give officials any specific names. On September 24, 2009, after Plaintiff was denied protection and sent back to the general population, he was stabbed in the face by a member of the gang MS-13, causing him to nearly lose an eye. On September 29, 2009, Plaintiff was transferred to the Chippewa Correctional Facility (URF) where he again asked for protection. During the interview, Defendant Beaulieu stated that the Inspector at URF had received a letter from MS-13 stating that Plaintiff would be killed if he was housed at KCF, Straits, Newberry, or URF, and that Plaintiff had until October 3, 2009, to get off the compound. On September 30, 2009, Defendants Nadeau and Mansfield denied Plaintiff's request for protection, stating that the information provided by Plaintiff was vague and that no prisoners were identified.

4

On October 8, 2009, Plaintiff filed grievance URF 09-10-2740-03B stating that he grieved a protective classification request denial. Defendants Swift and Robinson denied the grievance. On October 17, 2009, Plaintiff filed a step II appeal, asserting that Defendants Nadeau and Mansfield knew of the threatening letter, but kept it a secret so that they could deny Plaintiff protective custody, intentionally placing his life in danger. On October 24, 2009, while still being housed at URF, Plaintiff was stabbed in the back. Plaintiff was subsequently classified to segregation. On October 26, 2009, Defendant Beaulieu's brother, Sergeant Beaulieu, brought Plaintiff a protection request form and told him that Defendant Nadeau would not allow him to place Plaintiff on involuntary protective segregation because it would make Defendants Nadeau, Mansfield, Robinson and Swift liable for a civil suit and criminal prosecution. Sergeant Beaulieu told Plaintiff that if he did not sign the form, he would be placed back in the general population and his life would be in danger again. On October 27, 2009, Defendant Robinson classified Plaintiff to temporary segregation until he could be transferred or departed to a higher security level.

On November 2, 2009, Plaintiff was transferred to the Newberry Correctional Facility (NCF), despite MS-13 letter which indicated that Plaintiff would be in danger at NCF. Plaintiff requested that he be placed in protective custody and filed a grievance regarding his endangerment. Plaintiff's grievance was denied on November 4, 2009, but Plaintiff did not receive the step I response because he was departed from a security level two to a security level four. On November 8, 2009, while Plaintiff was housed at the Alger Maximum Correctional Facility (LMF), he attempted to file a step II appeal of that grievance, but it was denied by LMF administration. In December of 2009, Plaintiff filed a grievance regarding his endangerment, LMF 09-11-3911-24c, which was denied on December 28, 2009. Plaintiff attempted to file a step II appeal with attached exhibits, which was denied. Officials at LMF refused to return Plaintiff's exhibits. On December

7, 2009, Plaintiff sent several letters to Defendants Caruso and Granholm, as well as to state elected officials, but received no response. On December 28, 2009, Defendant Sherry notified Plaintiff that she had forwarded his letter of complaint to Defendant Bauman.

On March 7, 2010, April 14, 2010, and June 25, 2010, Plaintiff sent correspondence asking to be transferred to a level two facility, but each request was denied. On November 8, 2010, Plaintiff kited Defendant Rutter and asked to be reclassified to his true security level two. Plaintiff asserted that he was being kept in level four in retaliation for the fact that he did not provide the administration with the names of the individuals who had stabbed him. Defendant Rutter responded by stating that Plaintiff's history of protection requests warranted a higher security level and that LMF does not provide protective custody. Defendant Rutter further stated that there is protective custody in the Bellamy Creek Correctional Facility, which is a level two.

On April 26, 2011, Plaintiff sent a letter to the Security Classification Committee (SCC) at LMF informing them that Defendant Contreras had been attempting to get information from Plaintiff regarding the individuals who had stabbed him. Defendant Contreras stated that he was trying to build a file within the facility on MS-13 and that the Warden and Deputy Warden had received several letters threatening Plaintiff's life, which were being disregarded because Plaintiff would not provide them with names. On April 28, 2011, Plaintiff filed a grievance on Defendants Bauman, Lesatz, Spader, Rutter and Contreras for their failure to inform him of the death threats which were made against him on April 1, 2011, and the refusal to provide Plaintiff with protective custody. On November 14, 2011, Defendants Bauman, Lesatz, Spader, and Rutter attempted to transfer Plaintiff back to NCF despite the fact that Plaintiff's life would have been in danger again. Plaintiff refused to go to NCF and was placed in segregation. Plaintiff filed a grievance regarding this conduct, after which Defendants refused to do an annual security re-screening on Plaintiff for

seventeen months. When Plaintiff was re-screened, Defendants departed him to a higher security level in order to avoid having to transfer Plaintiff to another prison. On July 14, 2012, Plaintiff grieved all of the named Defendants for their "life endangering actions," but Defendant Trierweiler refused to file the grievance and Plaintiff was subsequently framed with false misconduct charges on August 14, 2012. Consequently, Plaintiff was transferred to the highest security level and on August 28, 2012, Plaintiff was transferred to AMF. Plaintiff seeks compensatory, punitive and nominal damages.

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates

7

must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 120 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

In this case, Defendants state that Plaintiff has filed only two grievances through step III, KCF-12-09-01-00064-10h and LMF 09-11-3911-24c. *See* Defendants' Exhibit 2, docket #40-3, p. 2 of 15. Grievance number KCF-12-09-01-00064-10h asserted that Plaintiff did not receive his store order and does not relate to the claims being asserted in this case. *Id*. at pp. 7-10. Defendants concede that grievance number LMF 09-11-3911-24c does appear to be related to Plaintiff's claims in this case. However, Defendants state that it only names Bauman and Lesatz, and asserts that they retaliated against Plaintiff and states that they retaliated against Plaintiff for filing a grievance regarding a denial of protection which resulted in Plaintiff being stabbed 23 days later. Defendants offer a copy of the step I grievance in support of this claim, however, the copy is so dark that it is not legible. *Id.* at p. 5 of 15. Fortunately, Plaintiff also offers a copy of this grievance as an attachment to his complaint which is substantially more legible. *See* docket #1-1, p. 13 of 38. In Plaintiff's step I grievance, he states that he attempted to resolve this issue with Spruce Resident Unit Manager, Assistant Resident Unit Supervisor, Deputy Warden, and Classification Director, but that they failed to correct the situation. Plaintiff then states that he was filing the grievance on the Warden and Deputy Warden for perpetuating the administration's retaliation against Plaintiff for grieving a denial of protection which resulted in Plaintiff being stabbed 23 days later. Plaintiff raised the fact that the administration had received letters threatening him and that they continued to deny him protection and attempted to send Plaintiff to NCF, one of the sites where Plaintiff was in danger. *Id.* Therefore, it is clear that this grievance serves to exhaust at least some of Plaintiff's claims against Defendants Bauman and Lesatz.

In addition, in Plaintiff's response to Defendants' motion for summary judgment, he asserts that on September 23, 2009, he filed a step I grievance along with exhibits on Defendant Bauman and members of the SCC, for failure to grant Plaintiff's transfer request on January 30,

9

2009. Immediately after he filed this grievance with the KCF Grievance Coordinator, Plaintiff was transferred to URF and was never given any acknowledgment that his grievance had been received. Plaintiff subsequently attached a carbon copy of the grievance to a handwritten step II appeal on September 28, 2009, and mailed it to KCF Warden Jeffery Woods and Defendant Caruso, along with a letter requesting relief in an attempt to exhaust his administrative remedies. The letter also explained explaining that he had filed a step I grievance, but had never received a receipt.

Plaintiff also states that on October 3, 2009, he filed grievance number URF 09-102740-03B against Defendants Nadeau and Mansfield for endangering Plaintiff's life by denying his protection request on September 30, 2009, despite evidence showing that MS-13 members intended to murder Plaintiff at the prison. The grievance response stated that Plaintiff's story was contradictory. Plaintiff requested a step II appeal form. Plaintiff was subsequently called to the control center by Defendant Nadeau, who told Plaintiff that the issue was resolved and that she would not allow Plaintiff to pursue it any further.

Plaintiff states that after he was threatened by gang members on the big yard, he called his parents and sister and informed them that Defendants Nadeau and Mansfield were refusing to protect him. Plaintiff's family members called the prison requesting protection for Plaintiff. After two weeks, Defendants Robinson and Nadeau told Plaintiff that if he did not stop his family from calling, they would have him placed in the hole and beaten to death. Plaintiff filed a grievance on Defendants Mansfield, Robinson, and Nadeau for threatening him, as well as a grievance on Defendants Swift and Robinson for their response to Plaintiff's prior grievance number URF 09-102740-03B. On October 18, 2009, Plaintiff had a kite returned with a post-it note stuck to it that he could not get a step II grievance form for these grievances, because they had never been filed. Therefore, Plaintiff prepared a handwritten step II and step III grievance appeal and attached the

carbon copies of both the grievances and internal affairs complaints and sent them to Defendant Caruso with a request that she forward them to internal affairs.

Plaintiff claims that Defendants' conduct prevented him from filing step II and III appeals to the grievances he filed regarding the allegations in his complaint. Because Plaintiff is asserting that the grievance policy was not "available" to him due to Defendants' actions, the undersigned concludes that there is a genuine issue of material fact regarding whether Defendants are entitled to summary judgment for failure to exhaust administrative remedies. Therefore, Defendants' motion for summary judgment (docket #39) is properly denied.

As noted above, Defendant Granholm has filed a motion to dismiss asserting that she was not personally involved in the alleged misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a

supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Granholm was personally involved in the activity which forms the basis of his claim. Plaintiff's only allegation against Defendant Granholm is that he sent her letters complaining of the actions of prison officials and that she failed to take corrective action. Defendant Granholm cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Granholm are properly dismissed for lack of personal involvement.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #39) be denied. In addition, I recommend that Defendant Granholm's motion to dismiss (docket #42) be granted.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2014

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).