UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY RICHARDSON,

        Plaintiff,              Case No. 2:12-cv-435

v.                                      Honorable Robert Holmes Bell

CATHERINE BAUMAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Larry Richardson, an inmate currently confined at the Saginaw Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections employees Defendants Catherine Bauman, Jacquiline Nadeau, D. P. Mansfield, Duncan MacLaren, Fredrick Robinson, T. Swift, Patricia Caruso, Scott Spader, Jeri-Ann Sherry, Unknown McBurney, Unknown Contreras, D. Lesatz, Unknown Rutter, R. Beaulieu, Mitchell Perry, Unknown Konrad, Robin Gilbert, Jeff Heeman, W. Trierweiler, Unknown Carberry[1], and J. Boynton.

Plaintiff alleges that while he was housed at the Kinross Correctional Facility (KCF), he was approached by members of the gang MS-13. On January 30, 2009, Plaintiff met with officials at KCF and requested protection. Plaintiff's request was denied because he could not give officials any specific names. On September 24, 2009, after Plaintiff was denied protection and sent back to the general population, he was stabbed in the face by a member of the gang MS-13, causing

---

[1] Named as Carbury in the complaint.

him to nearly lose an eye. On September 29, 2009, Plaintiff was transferred to the Chippewa Correctional Facility (URF) where he again asked for protection. During the interview, Defendant Beaulieu stated that the Inspector at URF had received a letter from MS-13 stating that Plaintiff would be killed if he was housed at KCF, Straits, Newberry, or URF, and that Plaintiff had until October 3, 2009, to get off the compound. On September 30, 2009, Defendants Nadeau and Mansfield denied Plaintiff's request for protection, stating that the information provided by Plaintiff was vague and that no prisoners were identified.

On October 8, 2009, Plaintiff filed grievance URF 09-10-2740-03B stating that he grieved a protective classification request denial. Defendants Swift and Robinson denied the grievance. On October 17, 2009, Plaintiff filed a step II appeal, asserting that Defendants Nadeau and Mansfield knew of the threatening letter, but kept it a secret so that they could deny Plaintiff protective custody, intentionally placing his life in danger. On October 24, 2009, while still being housed at URF, Plaintiff was stabbed in the back. Plaintiff was subsequently classified to segregation. On October 26, 2009, Defendant Beaulieu's brother, Sergeant Beaulieu, brought Plaintiff a protection request form and told him that Defendant Nadeau would not allow him to place Plaintiff on involuntary protective segregation because it would make Defendants Nadeau, Mansfield, Robinson and Swift liable for a civil suit and criminal prosecution. Sergeant Beaulieu told Plaintiff that if he did not sign the form, he would be placed back in the general population and his life would be in danger again. On October 27, 2009, Defendant Robinson classified Plaintiff to temporary segregation until he could be transferred or departed to a higher security level.

On November 2, 2009, Plaintiff was transferred to the Newberry Correctional Facility (NCF), despite the MS-13 letter which indicated that Plaintiff would be in danger at NCF. Plaintiff

requested that he be placed in protective custody and filed a grievance regarding his endangerment. Plaintiff's grievance was denied on November 4, 2009, but Plaintiff did not receive the step I response because he was departed from a security level two to a security level four. On November 8, 2009, while Plaintiff was housed at the Alger Maximum Correctional Facility (LMF), he attempted to file a step II appeal of that grievance, but it was denied by LMF administration. In December of 2009, Plaintiff filed a grievance regarding his endangerment, LMF 09-11-3911-24c, which was denied on December 28, 2009. Plaintiff attempted to file a step II appeal with attached exhibits, which was denied. Officials at LMF refused to return Plaintiff's exhibits. On December 7, 2009, Plaintiff sent several letters to Defendants Caruso and Granholm, as well as to state elected officials, but received no response. On December 28, 2009, Defendant Sherry notified Plaintiff that she had forwarded his letter of complaint to Defendant Bauman.

On March 7, 2010, April 14, 2010, and June 25, 2010, Plaintiff sent correspondence asking to be transferred to a level two facility, but each request was denied. On November 8, 2010, Plaintiff kited Defendant Rutter and asked to be reclassified to his true security level two. Plaintiff asserted that he was being kept in level four in retaliation for the fact that he did not provide the administration with the names of the individuals who had stabbed him. Defendant Rutter responded by stating that Plaintiff's history of protection requests warranted a higher security level and that LMF does not provide protective custody. Defendant Rutter further stated that there is protective custody in the Bellamy Creek Correctional Facility, which is a level two.

On April 26, 2011, Plaintiff sent a letter to the Security Classification Committee (SCC) at LMF informing them that Defendant Contreras had been attempting to get information from Plaintiff regarding the individuals who had stabbed him. Defendant Contreras stated that he

was trying to build a file within the facility on MS-13 and that the Warden and Deputy Warden had received several letters threatening Plaintiff's life, which were being disregarded because Plaintiff would not provide them with names. On April 28, 2011, Plaintiff filed a grievance on Defendants Bauman, Lesatz, Spader, Rutter and Contreras for their failure to inform him of the death threats which were made against him on April 1, 2011, and the refusal to provide Plaintiff with protective custody. On November 14, 2011, Defendants Bauman, Lesatz, Spader, and Rutter attempted to transfer Plaintiff back to NCF despite the fact that Plaintiff's life would have been in danger again. Plaintiff refused to go to NCF and was placed in segregation. Plaintiff filed a grievance regarding this conduct, after which Defendants refused to do an annual security re-screening on Plaintiff for seventeen months. When Plaintiff was re-screened, Defendants departed him to a higher security level in order to avoid having to transfer Plaintiff to another prison. On July 14, 2012, Plaintiff grieved all of the named Defendants for their "life endangering actions," but Defendant Trierweiler refused to file the grievance and Plaintiff was subsequently framed with false misconduct charges on August 14, 2012. Consequently, Plaintiff was transferred to the highest security level and on August 28, 2012, Plaintiff was transferred to AMF. Plaintiff seeks compensatory, punitive and nominal damages.

       Plaintiff claims that he is entitled to summary judgment against the defendants because defendants violated his constitutional rights by not protecting him from harm in the prison. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion

must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In the opinion of the undersigned, Plaintiff has failed to show that there exists a lack of a genuine issue of material fact on his claim. As support for his motion for summary judgment, Plaintiff has attached the MDOC policy directives for Litigation-Department and Employee Responsibilities, Humane Treatment and Living Conditions for Prisoners, Code of Ethics and Conduct-Employees, and Segregation Standards. Plaintiff has also attached copies of job descriptions for corrections employees. Plaintiff's exhibits do not establish a lack of a genuine issue of fact to establish that he is entitled to judgment at this time. Plaintiff's brief in support of his motion for summary judgment reads more like a complaint in that he simply asserts conclusions of

law, such as Defendants violated my Eighth Amendment rights. Plaintiff initially made no attempt to present factual evidence which could support his claim or show that he is entitled to judgment based upon a lack of a genuine issue of fact.

Plaintiff then filed a Motion for U.S. District Court Judge to Grant Docket #79/80 Motion for Summary Judgment or Docket #91 Motion for Entry of Judgment (Docket #104). In that pleading, plaintiff submitted outside evidence that may be considered in a motion for summary judgment. Plaintiff has alleged that Defendants failed to provide him protection from a prison gang and were deliberately indifferent to his request for protection. Plaintiff alleges that he was attacked and sustained significant injury.

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But

> an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff, and upheld the district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the

- 7 -

original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim. In the opinion of the undersigned, Plaintiff has failed to show that there exists a lack of a genuine issue of fact on the issue of whether Defendants acted with deliberate indifference to Plaintiff's requests for protection. In the opinion of the undersigned, Plaintiff is not entitled to judgment at this time.

Accordingly, it is recommended that Plaintiff's motion for summary judgment (Docket #79) be denied. It is further recommended that Plaintiff's motion for an immediate hearing and judgment against Defendants (Docket #91) be denied. Finally, it is recommended that Plaintiff's motion for the court to grant judgment (Docket #104) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   February 10, 2015