UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY RICHARDSON #361621,

        Plaintiff,        Case No. 2:12-cv-435

v.        HON. ROBERT HOLMES BELL

CATHERINE BAUMAN, *et al.*,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Larry Richardson pursuant to 42 U.S.C. § 1983. The remaining defendants in this case are Catherine Bauman, Jacquline Nadeau, D. P. Mansfield, Duncan MacLaren, Fredrick Robinson, T. Swift, Patricia Caruso, Scott Spader, Jeri-Ann Sherry, Unknown McBurney, Unknown Contreras, D. Lesatz, Unknown Rutter, R. Beaulieu, Mitchell Perry, Unknown Konrad, Robin Gilbert, Jeff Heeman, W. Trierweiler, Unknown Carbury, and J. Boynton. Defendants have now filed for a motion for summary judgment (docket #110) asserting that the majority of Plaintiff's claims are barred by the statute of limitations and that the remaining claims do not allege that Defendants performed unconstitutional acts, have not been exhausted, and are barred by 42 U.S.C. §1997e(e). Plaintiff has filed a motion to bar Defendants from obtaining summary judgment (docket #119) and a response (docket #121) to Defendants' motion. Upon review, I recommend that Defendants' motion be granted in part and denied in part. Further, I recommend that Plaintiff's motion be denied.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Plaintiff is presently incarcerated at Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff alleges that while he was housed at the Kinross Correctional Facility (KCF), he was approached by members of the gang MS-13. On January 30, 2009, Plaintiff met with officials at KCF and requested protection. Plaintiff's request was denied because he could not give officials any specific names. On September 24, 2009, after Plaintiff was denied protection and sent back to the general population, he was stabbed in the face by a member of the gang MS-13, causing him to nearly lose an eye. On September 29, 2009, Plaintiff was transferred to the Chippewa

Correctional Facility (URF) where he again asked for protection. During the interview, Defendant Beaulieu stated that the Inspector at URF had received a letter from MS-13 stating that Plaintiff would be killed if he was housed at KCF, Straits, Newberry, or URF, and that Plaintiff had until October 3, 2009, to get off the compound. On September 30, 2009, Defendants Nadeau and Mansfield denied Plaintiff's request for protection, stating that the information provided by Plaintiff was vague and that no prisoners were identified.

On October 8, 2009, Plaintiff filed grievance URF 09-10-2740-03B stating that he grieved a protective classification request denial. Defendants Swift and Robinson denied the grievance. On October 17, 2009, Plaintiff filed a step II appeal, asserting that Defendants Nadeau and Mansfield knew of the threatening letter, but kept it a secret so that they could deny Plaintiff protective custody, intentionally placing his life in danger. On October 24, 2009, while still being housed at URF, Plaintiff was stabbed in the back. Plaintiff was subsequently classified to segregation. On October 26, 2009, Defendant Beaulieu's brother, Sergeant Beaulieu, brought Plaintiff a protection request form and told him that Defendant Nadeau would not allow him to place Plaintiff on involuntary protective segregation because it would make Defendants Nadeau, Mansfield, Robinson and Swift liable for a civil suit and criminal prosecution. Sergeant Beaulieu told Plaintiff that if he did not sign the form, he would be placed back in the general population and his life would be in danger again. On October 27, 2009, Defendant Robinson classified Plaintiff to temporary segregation until he could be transferred or departed to a higher security level.

On November 2, 2009, Plaintiff was transferred to the Newberry Correctional Facility (NCF), despite MS-13 letter which indicated that Plaintiff would be in danger at NCF. Plaintiff requested that he be placed in protective custody and filed a grievance regarding his endangerment.

Plaintiff's grievance was denied on November 4, 2009, but Plaintiff did not receive the step I response because he was departed from a security level two to a security level four. On November 8, 2009, while Plaintiff was housed at the Alger Maximum Correctional Facility (LMF), he attempted to file a step II appeal of that grievance, but it was denied by LMF administration. In December of 2009, Plaintiff filed a grievance regarding his endangerment, LMF 09-11-3911-24c, which was denied on December 28, 2009. Plaintiff attempted to file a step II appeal with attached exhibits, which was denied. Officials at LMF refused to return Plaintiff's exhibits. On December 7, 2009, Plaintiff sent several letters to Defendants Caruso and Granholm, as well as to other state officials, but received no response. On December 28, 2009, Defendant Sherry notified Plaintiff that she had forwarded his letter of complaint to Defendant Bauman.

On March 7, 2010, April 14, 2010, and June 25, 2010, Plaintiff sent correspondence asking to be transferred to a level two facility, but each request was denied. On November 8, 2010, Plaintiff kited Defendant Rutter and asked to be reclassified to his true security level two. Plaintiff asserted that he was being kept in level four in retaliation for the fact that he did not provide the administration with the names of the individuals who had stabbed him. Defendant Rutter responded by stating that Plaintiff's history of protection requests warranted a higher security level and that LMF does not provide protective custody. Defendant Rutter further stated that there is protective custody in the Bellamy Creek Correctional Facility, which is a level two.

On April 26, 2011, Plaintiff sent a letter to the Security Classification Committee (SCC) at LMF informing them that Defendant Contreras had been attempting to get information from Plaintiff regarding the individuals who had stabbed him. Defendant Contreras stated that he was trying to build a file within the facility on MS-13 and that the Warden and Deputy Warden had

received several letters threatening Plaintiff's life, which were being disregarded because Plaintiff would not provide them with names. On April 28, 2011, Plaintiff filed a grievance on Defendants Bauman, Lesatz, Spader, Rutter and Contreras for their failure to inform him of the death threats which were made against him on April 1, 2011, and the refusal to provide Plaintiff with protective custody.

On November 14, 2011, Defendants Bauman, Lesatz, Spader, and Rutter attempted to transfer Plaintiff back to NCF despite the fact that Plaintiff's life would have been in danger again. Plaintiff refused to go to NCF and was placed in segregation. Plaintiff filed a grievance regarding this conduct, after which Defendants refused to do an annual security re-screening on Plaintiff for seventeen months. When Plaintiff was re-screened, Defendants departed him to a higher security level in order to avoid having to transfer Plaintiff to another prison. On July 14, 2012, Plaintiff grieved all of the named Defendants for their "life endangering actions," but Defendant Trierweiler refused to file the grievance and Plaintiff was subsequently framed with false misconduct charges on August 14, 2012. Consequently, Plaintiff was transferred to the highest security level and on August 28, 2012, Plaintiff was transferred to AMF. Plaintiff seeks compensatory, punitive and nominal damages.

Defendants claim that they cannot be held liable for any alleged misconduct that took place before November 15, 2009, due to Michigan's statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*,

No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer*, 98 F.3d at 220.

Defendants assert that several of Plaintiff's claims are untimely.  Plaintiff asserts claims arising from events that occurred between January 30, 2009, and November 8, 2009.  However, the statute of limitations did not begin to run on these claims until after Plaintiff had time to exhaust his administrative remedies.

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) (emphasis added). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted. *See Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir.1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir.1999).

*Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

As noted previously by the court, Plaintiff filed several grievances regarding the failure to protect him.  On October 3, 2009, Plaintiff filed a step I grievance, URF 09-102740-03B, against Defendants Nadeau and Mansfield for endangering his life by denying his protection request on September 30, 2009.  Plaintiff also filed a grievance on Defendants Mansfield, Robinson, and

Nadeau for threatening him with segregation if his family would not stop calling the prison to request protection for Plaintiff. In addition, Plaintiff filed a grievance on Defendants Swift and Robinson regarding their continued denial of his protection custody requests. *See* docket #53, p. 10 of 13. Plaintiff asserts that his attempts to appeal the denial of these grievances was thwarted by Defendants' refusal to give him appeal forms. Thereafter, Plaintiff filed handwritten step II and III grievance appeals with attached carbon copies of the grievances and internal affairs complaints, and sent them to Defendant Caruso with a request to have them forwarded to internal affairs. *Id.* MDOC Policy Directive 03.02.130 (effective July 9, 2007) provides that "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S. Therefore, the statute of limitations did not begin to run on these claims until February of 2010.

In addition, Plaintiff filed grievance number LMF 09-11-3911-24c on November 8, 2009. *See* docket #1-1, p. 13 of 38. In Plaintiff's step I grievance, he states that he attempted to resolve this issue with Spruce Resident Unit Manager, Assistant Resident Unit Supervisor, Deputy Warden, and Classification Director, but that they failed to correct the situation. Plaintiff then states that he was filing the grievance on the Warden and Deputy Warden for perpetuating the administration's retaliation against Plaintiff for grieving a denial of protection which resulted in Plaintiff being stabbed 23 days later. Plaintiff raised the fact that the administration had received letters threatening him and that they continued to deny him protection and attempted to send Plaintiff to NCF, one of the sites where Plaintiff was in danger. *Id.* According to Defendants' prior motion for summary judgment based on failure to exhaust administrative remedies, Plaintiff's step III grievance appeal was mailed to him on April 19, 2010. The statute of limitations did not begin to

run on the failure to protect claims which resulted in Plaintiff being stabbed until Plaintiff received the step III denial. Plaintiff filed his complaint on November 15, 2012, less than three years after the statute of limitations began running. Therefore, Plaintiff's claims that Defendants failed to protect him from being stabbed are not barred by the statute of limitations.

> Plaintiff claims that:
>
> On November 8, 2010, Plaintiff kited A.D.W. Rutter to be reclassified to his true level 2, as he was being retaliated [against] and being held in level 4 for not being able to provide the administration with names of the individuals who stabbed him two times. A.D.W. Rutter responded by saying, "history of protection requests warrants higher security level." (See Exhibit 15 Security Class Screen). LMF do[es] not provide protective custody! There is protective custody facilities in lower level, Bellamy Creek Correctional Facility, level 2.

Docket #1, p. 3-4. To the extent that Plaintiff is asserting that Defendant Rutter violated his due process rights when he refused to lower Plaintiff's security classification, this claim lacks merit. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without

a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Plaintiff claims that the conduct of Defendants Bauman, Lesatz, Spader, Rutter, and Contreras violated his Eighth Amendment right to be protected from foreseeable violence perpetrated by other inmates after Defendants received a letter on April 1, 2011, that threatened Plaintiff's life. The letter was signed by MS-13, a gang that had harassed and assaulted Plaintiff in the past. Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

9

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

Plaintiff asserts that Defendants' failure to place him in protective custody after they received the April 1, 2011, is unconstitutional. However, even if the April 1, 2011, letter constitutes a credible threat of serious bodily harm, Defendants did not possess a culpable state of mind. Plaintiff stated in his deposition that after being denied protective custody:

> [Plaintiff] requested to be housed in a reintegration program to, you know, basically restrict [MS-13's] access to [Plaintiff]. Every move we made inside the program was being monitored up under a correction officer. Or it was supervised. That was their alternative to granting me protection. That was on – they gave me – they approved me being in the reintegration on April 28th, 2011. At that time that's when I wrote another grievance.

Docket # 111-2, p. 30. Defendants do not dispute that Plaintiff was denied protective custody. However, Plaintiff was offered an alternative form of protection, one that placed Plaintiff in an area of the prison that was highly monitored and restricted other inmates' access to Plaintiff. Defendants did not completely deny Plaintiff protection, nor did they offer protection that was so woefully inadequate as to amount to no protection at all. Plaintiff and Defendants' opinions merely differ as to the appropriate level of protection Plaintiff requires, which is insufficient to establish a valid Eighth Amendment claim.

On November 14, 2011, Defendants Bauman, Lesatz, Spader, Rutter, and Contreras attempted to transfer Plaintiff to Newberry Correctional Facility. Plaintiff refused to cooperate by declining to allow a strip search. Ultimately, Defendants placed Plaintiff in segregation instead of transferring him. Plaintiff asserts that because the letter stated that Plaintiff would be killed if he went to Newberry Correctional Facility, Defendants' attempt to transfer him violated his Eighth Amendment rights.

As stated above, in order for Plaintiff's claim to succeed, he must show that a substantial risk of harm was present, and that Defendants possessed a culpable state of mind. Plaintiff asserts that the letters threatening his life establish the first element. Plaintiff further asserts that, because Defendants knew of the letters, their actions constitute a wanton disregard for Plaintiff's safety. Defendants merely assert that Plaintiff is not entitled to being incarcerated in a particular prison. However, this argument has no bearing on an Eighth Amendment analysis. Therefore, Plaintiff's claim contains genuine issues as to material facts, and survives this motion for summary judgment.

Defendants alternatively argue that Plaintiff has failed to exhaust his administrative remedies. On November 14, 2011, Plaintiff submitted a step one grievance, identified as LMF-2011-11-2610-27A, addressing his transfer to Newberry. On November 22, 2011, Plaintiff received a grievance rejection letter from Defendant Trierweiler, that was authorized by Defendant Lesatz. The letter read, in part:

> Your grievance is being returned to you without processing for reason that the issue(s) contained in your grievance are no[n]grievable per policy. Per PD-03.02.130 decisions made by a Hearing Officer on minor or major misconducts.... are nongrievable. Your avenue of

> recourse is through[] the rehearing appeal process not through the grievance process. Grievance denied at first step.

Docket #1-1, p. 31. On November 15, 2011, Plaintiff filed another grievance regarding his transfer. This grievance was rejected for being illegible. It is unclear whether this grievance was refiled.

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). In the instant case, Defendants have failed to prove that Plaintiff has not exhausted his administrative remedies. Defendants have submitted a MDOC prisoner step three grievance report. However, this report only assists in determining whether administrative remedies are exhausted for conduct that is grievable. Plaintiff is complaining about conduct that he was told was nongrievable. Defendants must proffer evidence showing that Plaintiff did not exhaust his "available recourse through the rehearing process." Defendants have proffered no such evidence. Therefore, a genuine issue of material fact exists with regard to whether Plaintiff exhausted his administrative remedies.

Defendants further assert that Plaintiff may not proceed on his Eighth Amendment claims because he suffered no physical injury. 42 U.S.C. § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In *King v. Zamiara*, the Sixth Circuit held that "deprivations of [constitutional] rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to [constitutional] rights." *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015). The court based its decision on well founded canons of statutory construction. Namely, that statutes should be interpreted by their plain meaning, and the

rule against surplusage. The statute itself says nothing about claims seeking redress for constitutional injuries, which "are distinct from mental and emotional injuries." *Id.* at 213. Therefore, to demand that all Eighth Amendment violations require a contemporaneous physical injury would render the phrase, "for mental or emotional injury," superfluous. In the instant case, Defendants were aware that Plaintiff had previously been stabbed by members of MS-13. Defendants had received specific information that Plaintiff would be assaulted again if placed in certain prisons, and despite this knowledge, attempted to send Plaintiff to a prison where they knew he was at risk. In light of the holding in *King v. Zamiara*, it is clear that Plaintiff need not suffer physical harm to recover compensatory damages for a failure to protect claim under § 1997e(e).

Plaintiff claims that, because he refused to go to Newberry, he was retaliated against. In his complaint, Plaintiff states:

> On November 14 and 15 2011 Plaintiff grieved his being segregated for refusing to endanger [Plaintiff's] life and [D]efendants retaliated against [Plaintiff] through ticketing, segregating, and placing [Plaintiff] on sanctions, refusing to do a annual security rescreening on [Plaintiff] for seventeen months from 11-08-2010 - 4-18-12 then having [Plaintiff] departed again for no justifiable reason whatsoever other than to avoid transferring [Plaintiff] from Alger.

Docket #1, p. 9.

Under Federal Rule of Civil Procedure 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but rather demands "something more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing *Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading merely offering

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Moreover, a complaint must state more than "naked assertion[s]" bereft of "further factual enhancement." *Id.,* at 557.

The complaint must contain sufficient facts, that if accepted as true, would "state a claim to relief that is plausible on its face." *Id.,* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, at 678. (citing *Twombly.,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, at 679. Claimants must show more than a mere possibility of misconduct in order to be entitled to relief, but they are not required to show that their claims are probable. *Id.*

In his claim of retaliation for refusing to go to Newberry, Plaintiff fails to allege that a specific Defendant performed a specific adverse action against him. Instead, Plaintiff states that "Defendants" retaliated against him. Twenty-one Defendants remain in this case. Plaintiff cannot merely assert that all of these Defendants engaged in retaliatory conduct, without alleging any specific instances of misconduct. In addition, the court notes that during the relevant time period, several of the Defendants were not working in the facility where Plaintiff was being housed. Plaintiff also asserts that Defendants' adverse acts consisted of "ticketing, segregating, and placing [Plaintiff] on sanctions… refusing to do annual security screenings… then having [Plaintiff] departed for no justifiable reason." Docket #1, p. 9. Plaintiff offers evidence that he was refused an annual security screening, but fails to show whose decision it was to deny the screening. Additionally, Plaintiff proffers no evidence regarding the other four adverse actions. Plaintiff has made vague

14

assertions that lack factual support. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that he was retaliated against for refusing to go to Newberry.

In Plaintiff's final claim, he states:

The Alger administration retaliated against [Plaintiff] by framing [him] on false charges on August 14, 2012, exactly one month from the day of [his] grievance, segregating me and transferring me to the highest level in prison, and on 8-28-12 transferred me to Baraga prison and intentionally refused to transfer my television here to me til this day (10-12-12).

Docket #1, p. 9. Plaintiff alleges that he submitted a grievance sometime in July of 2012. However, Plaintiff fails to proffer this grievance as evidence[1]. Additionally, Plaintiff offers no evidence of an August 14, 2012, misconduct report. Plaintiff failed to clearly identify which Defendants harmed him. Moreover, Plaintiff failed to associate any one specific harm as being caused by any one specific Defendant. Therefore, Defendants are entitled to summary judgment on this claim.

Plaintiff asserts numerous additional claims in his response (docket #121) to Defendants' motion. However, pleadings may only be made in:

(1) a complaint;
(2) an answer to a complaint;
(3) an answer to a counterclaim designated as a counterclaim;
(4) an answer to a crossclaim;
(5) a third-party complaint;
(6) an answer to a third-party complaint;
(7) if the court orders one, a reply to an answer

Federal Rules of Civil Procedure 7(a). Therefore, Plaintiff may not assert additional claims within his response to Defendants' motion. However, it is possible for Plaintiff to assert these additional claims by amending his complaint. At this stage, amending a complaint requires "the opposing

---

[1] Docket#1-1 page 37 may be the grievance Plaintiff claims to have submitted. However, it is illegible, and lacks a grievance identifier. Therefore, it shall not be considered in this motion.

party's written consent or the court's leave." Federal Rules of Civil Procedure 15(a)(2). Plaintiff has not requested that he be given leave to amend his complaint.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #110) be granted as to Defendants MacLaren, Caruso, Sherry, McBurney, Beaulieu, Perry, Konrad, Gilbert, Heeman, Trierweiler, Carbury, and Boynton. With regard to Defendants Nadeau, Mansfield, Robinson, Swift, Bauman, Lesatz, Spader, Rutter, and Contreras, there exists a genuine issue of material fact regarding Plaintiff's Eighth Amendment claims involving the 2009 stabbings, as well as Plaintiff's transfer to Newberry. Therefore, I recommend that the motion for summary judgment be denied as to these claims. However, I recommend that all other claims against Defendants Nadeau, Mansfield, Robinson, Swift, Bauman, Lesatz, Spader, Rutter, and Contreras be dismissed with prejudice. I further recommend that Plaintiff's motion to bar Defendants' motion for summary judgment (docket# 119) be denied[2].

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 10, 2015

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[2]On August 15, 2014, this Court extended the dispositive motion deadline at Defendant's request. Docket #100. Yet, even with this extension, Defendants failed to adhere to the case management schedule. Deadlines are set to enhance judicial efficiency. Defendants are urged to comply with the Court's motion deadlines in the future.