UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LARRY RICHARDSON,

        Plaintiff,

v.                                       Case No.  2:12-cv-435
                                       HON.  ROBERT HOLMES BELL

CATHERINE BAUMAN, et al.,

        Defendants.

_____/

REPORT AND RECOMMENDATION

        Plaintiff Larry Richardson filed this *pro se* civil rights action pursuant to 42 U.S.C.

§ 1983 against the remaining Defendants including: Alger Correctional Facility (Alger) Warden

Catherine Bauman, Alger Deputy Warden Scott Spader, Alger Deputy Warden D. Lesatz, Alger

Inspector Rutter, Chippewa Correctional Facility (Chippewa) Assistant Deputy Warden Jacquline

Nadeau,  Chippewa Assistant Deputy Warden Fredrick Robinson, Chippewa R.U.M. T. Swift, and

Chippewa R.U.M. D.P. Mansfield.[1]  The remaining Eighth Amendment claims involve Plaintiff's

failure to protect allegations with regard to the 2009 stabbings and the attempted transfer of Plaintiff

to the Newberry Correctional Facility.

_____

   [1]Defendants Duncan MacLaren, Patricia Caruson, Jennifer Granholm, Jeri-Ann Sherry, Unknown
McBurney, Unknown Contreras, R. Beaulieu, Mitchell Perry, Unknown Konrad, Robin Gilbert, Jeff
Heeman, W. Trierweiler, Unknown Carbury, and J. Boynton have been dismissed as parties to this
action.  Defendant Mansfield worked at Chippewa in 2009, but now works at Kinross Correctional
Facility.

The remaining Defendants have filed a motion for summary judgment arguing that they did not act with deliberate indifference toward Plaintiff's requests for protection (ECF No. 157). Plaintiff filed a response (ECF No. 161) and Defendants filed a reply to the response (ECF No. 164).

In a prior Report and Recommendation dated August 10, 2015, I set forth the facts of this case:

> Plaintiff is presently incarcerated at Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff alleges that while he was housed at the Kinross Correctional Facility (KCF), he was approached by members of the gang MS-13. On January 30, 2009, Plaintiff met with officials at KCF and requested protection. Plaintiff's request was denied because he could not give officials any specific names. On September 24, 2009, after Plaintiff was denied protection and sent back to the general population, he was stabbed in the face by a member of the gang MS-13, causing him to nearly lose an eye. On September 29, 2009, Plaintiff was transferred to the Chippewa Correctional Facility (URF) where he again asked for protection. During the interview, Defendant Beaulieu stated that the Inspector at URF had received a letter from MS-13 stating that Plaintiff would be killed if he was housed at KCF, Straits, Newberry, or URF, and that Plaintiff had until October 3, 2009, to get off the compound. On September 30, 2009, Defendants Nadeau and Mansfield denied Plaintiff's request for protection, stating that the information provided by Plaintiff was vague and that no prisoners were identified.
>
> On October 8, 2009, Plaintiff filed grievance URF 09-10-2740-03B stating that he grieved a protective classification request denial. Defendants Swift and Robinson denied the grievance. On October 17, 2009, Plaintiff filed a step II appeal, asserting that Defendants Nadeau and Mansfield knew of the threatening letter, but kept it a secret so that they could deny Plaintiff protective custody, intentionally placing his life in danger. On October 24, 2009, while still being housed at URF, Plaintiff was stabbed in the back. Plaintiff was subsequently classified to segregation. On October 26, 2009, Defendant Beaulieu's brother, Sergeant Beaulieu, brought Plaintiff a protection request form and told him that Defendant Nadeau would not allow him to place Plaintiff on involuntary protective segregation because it would make Defendants Nadeau, Mansfield, Robinson and Swift liable for a civil suit and criminal prosecution. Sergeant Beaulieu told Plaintiff that if he did not sign the form, he would be

- 2 -

placed back in the general population and his life would be in danger again. On October 27, 2009, Defendant Robinson classified Plaintiff to temporary segregation until he could be transferred or departed to a higher security level.

On November 2, 2009, Plaintiff was transferred to the Newberry Correctional Facility (NCF), despite the MS-13 letter which indicated that Plaintiff would be in danger at NCF. Plaintiff requested that he be placed in protective custody and filed a grievance regarding his endangerment. Plaintiff's grievance was denied on November 4, 2009, but Plaintiff did not receive the step I response because he was departed from a security level two to a security level four. On November 8, 2009, while Plaintiff was housed at the Alger Maximum Correctional Facility (LMF), he attempted to file a step II appeal of that grievance, but it was denied by LMF administration. In December of 2009, Plaintiff filed a grievance regarding his endangerment, LMF 09-11-3911-24c, which was denied on December 28, 2009. Plaintiff attempted to file a step II appeal with attached exhibits, which was denied. Officials at LMF refused to return Plaintiff's exhibits. On December 7, 2009, Plaintiff sent several letters to Defendants Caruso and Granholm, as well as to other state officials, but received no response. On December 28, 2009, Defendant Sherry notified Plaintiff that she had forwarded his letter of complaint to Defendant Bauman.

On March 7, 2010, April 14, 2010, and June 25, 2010, Plaintiff sent correspondence asking to be transferred to a level two facility, but each request was denied. On November 8, 2010, Plaintiff kited Defendant Rutter and asked to be reclassified to his true security level two. Plaintiff asserted that he was being kept in level four in retaliation for the fact that he did not provide the administration with the names of the individuals who had stabbed him. Defendant Rutter responded by stating that Plaintiff's history of protection requests warranted a higher security level and that LMF does not provide protective custody. Defendant Rutter further stated that there is protective custody in the Bellamy Creek Correctional Facility, which is a level two.

On April 26, 2011, Plaintiff sent a letter to the Security Classification Committee (SCC) at LMF informing them that Defendant Contreras had been attempting to get information from Plaintiff regarding the individuals who had stabbed him. Defendant Contreras stated that he was trying to build a file within the facility on MS-13 and that the Warden and Deputy Warden had received several letters threatening Plaintiff's life, which were being disregarded because Plaintiff would

- 3 -

not provide them with names.  On April 28, 2011, Plaintiff filed a grievance on Defendants Bauman, Lesatz, Spader, Rutter and Contreras for their failure to inform him of the death threats which were made against him on April 1, 2011, and the refusal to provide Plaintiff with protective custody.

On November 14, 2011, Defendants Bauman, Lesatz, Spader, and Rutter attempted to transfer Plaintiff back to NCF despite the fact that Plaintiff's life would have been in danger again. Plaintiff refused to go to NCF and was placed in segregation.  Plaintiff filed a grievance regarding this conduct, after which Defendants refused to do an annual security re-screening on Plaintiff for seventeen months.  When Plaintiff was re-screened, Defendants departed him to a higher security level in order to avoid having to transfer Plaintiff to another prison.  On July 14, 2012, Plaintiff grieved all of the named Defendants for their "life endangering actions," but Defendant Trierweiler refused to file the grievance and Plaintiff was subsequently framed with false misconduct charges on August 14, 2012.  Consequently, Plaintiff was transferred to the highest security level and on August 28, 2012, Plaintiff was transferred to AMF. Plaintiff seeks compensatory, punitive and nominal damages.

ECF No. 136, PageID.876-879.

Defendants argue that the undisputed factual evidence supports their motion for summary judgment. Defendants have asserted that Plaintiff "believes that while Plaintiff was housed at Kinross Correctional Facility he was threatened by a MS-13 gang.  Plaintiff cannot identify gang members who allegedly threatened him.  Plaintiff was first threatened in December 2008, but waited until January 30, 2009, to request protection.  Plaintiff denies involvement in a gang.  Plaintiff asserts that he purchased store goods for about seven months as payment for protection to gang members.  Plaintiff cannot identify those gang members.   Plaintiff was allegedly stabbed on September 22, 2009, near his eye.  Plaintiff could not identify the individual who stabbed him or identify any witnesses to the incident despite the fact that he was allegedly within a group of inmates when he was stabbed.  The individual who stabbed Plaintiff was not caught.  No video evidence of the stabbing was discovered.

- 4 -

Plaintiff was transferred to the Chippewa Correctional Facility.  Plaintiff was stabbed in the back shoulder on October 24, 2009.  The two inch laceration required only minimal treatment.  The alleged assailant was not identified, there were no witnesses, Plaintiff could not provide any features of the alleged assailant, and no video evidence of the incident was discovered. Defendants argue that Plaintiff's claim of threats were taken seriously, but were rejected after  investigations and review by a Security Classification Committee (SCC).  In 2011, Defendants attempted to transfer Plaintiff from Alger to Newberry.  Plaintiff refused to transfer and continued to be housed at Alger.

Chippewa ARUS Robert Beaulieu investigated Plaintiff's request for protection.  He had never heard of MS-13 gang presence at Chippewa.  ECF No. 158-7, PageID.1011.  Beaulieu got involved after the letter was sent to the inspector's office and he was responsible for interviewing Plaintiff.  *Id*.  As an investigator, Defendant Beaulieu's number one goal is to insure prisoner safety.  PageID.1012.  In Beaulieu's experience, when a prisoner is threatened the prisoner can provide specific information concerning the threat.  *Id.*  In this instance, both the letter and Plaintiff's assertions were vague.  Plaintiff provided no additional information.  PageID.1013.   Prior to receiving the letter, Beaulieu had never heard of the MS-13 gang.  *Id.*  Initially, he thought the letter was not a real threat because he never heard of any individual or group sending a letter that said they intended to harm somebody.  *Id.*  Further, the fact that the letter indicated that Plaintiff could not lock in Upper Peninsula prisons was suspect.  *Id.*  Beaulieu's involvement was to document his investigation for the SCC to review.  PageID.1015.  It is the role of the SCC to make a final decision.  *Id.*

Defendant Jacqueline Nadeau was a member of the SCC at Chippewa.  She testified that Plaintiff's injury at Kinross was a factor the SCC considered in the decision to deny his request for protection.  ECF No. 158-3, PageID.982.  The Committee considered that Plaintiff had claimed

that a prisoner approached him who used to be confined in Kinross. Plaintiff could not provide any identification or description of that individual. *Id.* She stated "our goal is to prevent prisoners from threatening each other, and if somebody is threatening him, we want to deal with that individual." *Id*. Defendant Nadeau had no knowledge of MS-13 gang activity at the prison. *Id.* She testified that in her experience security threat groups do not send letters indicating that they intend to harm another prisoner. *Id.* Similarly, she found it suspicious that the letter indicated that plaintiff could not "lock at Kinross, Straits, Newberrry or this facility, Chippewa . . . because a lot of prisoners don't' want to lock in the U.P. because they can't get visits or people up this far. . . ." *Id.* Defendant Nadeau believed that Plaintiff was manipulating them to get transferred to a downstate prison. *Id.* She stated that since Plaintiff could not provide information to support the claimed threat, the committee had no information which could substantiate the claims. PageID.983. Plaintiff could not even state whether the prisoner who allegedly stabbed him at Kinross was black, white, or Hispanic. *Id*. In denying Plaintiff's request, Defendant Nadeau explained that "we discussed it back and forth, interviewed and we signed [the denial] at the same time." *Id.* Defendant Mansfield was also a member of the SCC. ECF No. 158-6, PageID.1004. When a prisoner requests protection, the prisoner is asked to identify who they fear, why they fear them, and to provide names, numbers, and locks to generate a report that is used by the SCC. *Id.* Defendant Mansfield testified that it is a red flag when a prisoner claims that he cannot lock in a Upper Peninsula prison and must be transferred downstate. Mansfield explained that if a group of prisoners can harm a prisoner in an Upper Peninsula prison, it would be no different downstate. PageID.1005. Defendant Mansfield believed that Plaintiff failed to provide any information that could lead to a verification of his need for protection. PageID.1005-1006.

Chippewa Assistant Deputy Warden Frederick Robinson testified that he was involved in investigating the threat and Plaintiff's request for protection.   He had never heard of the MS-13 gang.   He spoke with the Security Threat Group (STG) Coordinators at Chippewa and Kinross, who informed him that they did not have any contact with the MS-13 gang at their respective prisons.   Defendant Robinson concluded that the MS-13 gang had no presence at Chippewa. ECF No. 158-4, PageID.988.   The STG Coordinator kept up to date records on the gangs at the prisons.   *Id*.   His investigation was due to his role in responding to Plaintiff's grievance after he was denied protection from the SCC.   *Id.*   His conclusion was there was no way to determine whether Plaintiff was assaulted by a prisoner or whether the injury was self inflicted.   PageID.989. The injury was to plaintiff's back left shoulder within reach of his right arm and was not severe. PageID.990.  Plaintiff received no treatment and provided no information about the alleged assailant. *Id.*   Defendant Robinson explained that "if you can't describe someone who has allegedly stabbed you, I mean, white, black, Puerto Rican, tall, short, fat, hair color, I mean, if you can't give any of that information or are unwilling to, then basically, there is nothing to go on."  PageID.991.

Former Chippewa Resident Unit Manager Terry Swift testified that she was involved in responding to Plaintiff's grievance.   ECF No. 158-5, PageID.998.   Defendant Swift testified that she found no violations after her investigation that included looking at Defendant Nadeau's detailed security classification comments.   Defendant Swift had heard of the MS-13 gang, but was not aware of any MS-13 gang activity at the prison.

Alger Warden Catherine Bauman testified that she was responsible for the operation of Alger. ECF No. 158-8, PageID.1022.   Defendant Bauman testified that Inspectors and the Gang Coordinator were responsible for matters associated with security threat groups in the prisons. Transfers of prisoners are managed by deputy wardens and housing staff.  PageID.1023.   Defendant

Bauman was not involved in Plaintiff's transfers from any facilities. Warden Bauman was aware of the MS-13 gang, but stated that she was "not aware of any presence, nor have we had - - that - - nor am I aware of any presence in the past either. It is not a gang that the inspectors have discussed with me." *Id.* The warden is not involved in investigating requests for protection. PageID.1024.

Alger Deputy Warden Lesatz testified that he did not recall the incident involving the intention to transfer Plaintiff from Alger to Newberry and Plaintiff's refusal to transfer. ECF No. 158, PageID.1033. Defendant Lesatz was not aware of the presence of the MS-13 gang at Alger. PageID.1034. Defendant Lesatz did not recall any facts about grievances filed by Plaintiff and had no recollection of any threats made against Plaintiff. PageID.1035. Defendant Lesatz agreed that a prisoner should not be transferred to a prison where there existed a credible threat to that prisoner's safety. PageID.1037. Defendant Sprader was an Assistant Deputy Warden at Alger in 2011. ECF No. 158-10. He does not recall receiving a letter from the MS-13 gang. PageID.1042. Plaintiff was housed in the "reintegration program" which was voluntary segregation housing for those prisoners who did not want to house in the general population. PageID.1043. Sprader does not recall why Plaintiff wanted to be housed in voluntary segregation at Alger. *Id.*

Alger Assistant Deputy Warden and Inspector Rutter testified that he has no recollection of Plaintiff. ECF No. 158-11, PageID.1048. He has never heard of a gang sending a letter indicating a threat to another prisoner. PageID.1049. He does not believe that he ever saw the letter and indicated that he would have remembered the letter because it is unusual and serious. PageID.1049-1050. Rutter testified that he had knowledge of the MS-13 group as an extremely violent group from the news, but he was not aware of the MS-13 gang at Alger. PageID.1053. Rutter did concede that it was possible that some prisoners who claim to be MS-13 members could have been incarcerated at Alger. *Id.* Rutter testified that he was not generally involved in transferring

prisoners. *Id.*   Rutter testified that he was not involved in Plaintiff's request for protection. PageID.1055.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners.  *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland*

- 9 -

*v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate

violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).

Recognizing that a prison official has an obligation to protect an inmate from assault by another

inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison

official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court

stated:

> We hold instead that a prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an excessive
> risk to inmate health or safety; the official must both be aware of facts
> from which the inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference. . . . But an
> official's failure to alleviate a significant risk that he should have
> perceived but did not, while no cause for commendation, cannot
> under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two

conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present

and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something

more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate'

or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963

F.2d 851, 853 (6th Cir. 1992); *Walker*, 917 F.2d 1449 ; *McGhee*, 852 F.2d at 881. An error of

judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir.

1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the

dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison

- 10 -

officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff, and upheld the district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

In order to impose liability on a Defendant, Plaintiff must show that each Defendant was deliberately indifferent to a specific, known risk to Plaintiff's safety. *Farmer*, 511 U.S. at 833. Where there is inconsistent information regarding the identity of the attacker, or where Plaintiff refuses to identify his attacker, the denial of a request for a SPON (Special Problem Offender Notification) does not constitute deliberate indifference to a substantial risk of harm to Plaintiff. *Plovie v. Jackson*, 2005 WL 2405952, at *5 (W.D. Mich. Sept. 29, 2005).

Plaintiff alleges that he was first denied protection by Defendants in January 2009, while housed at Kinross. Plaintiff asserts that after being threatened by MS-13 gang members he requested protection on January 30, 2009. At that time, Plaintiff indicated that he had been threatened on January 7, 13, and 26 by MS-13 gang members. ECF No. 161-2, PageID.1117. Plaintiff's statement was taken by Sergeant David Issard. A Michigan Department of Corrections Voluntary Classification to Protective Segregation form was issued denying Plaintiff's request for

protection.  SCC members J. Horwood and R. Norton denied Plaintiff's request on February 2, 2009, because "prisoner cannot identify anyone that has threatened him, unable to substantiate any need for prot.  Protection request denied.  Release to KCF G. P."  ECF No. 161-3. PageID.1119.  Plaintiff alleges that after he was denied protection and released to general population he was stabbed in the face on or about September 24, 2009.  As a result, Plaintiff was transferred to Chippewa.

Plaintiff is not asserting that any of the remaining Defendants were involved in the denial of protection at Kinross or in his transfer to Chippewa.  ECF No. 1.  Plaintiff argues that Defendants became involved after he was transferred to Chippewa.  Plaintiff asserts that once he was transferred to Chippewa he requested protection because he was told by MS-13 gang members that he would be killed if he did not leave Chippewa by October 3, 2009.   Plaintiff asserts that when he was interviewed by ARUS Beaulieu he was informed about a letter that MS-13 gang members had sent to the Chippewa Inspector dated September 29, 2009, "that Plaintiff would be killed if he was housed at Kinross, Straits, Newberry, or Chippewa.  That Plaintiff had until October 3, 2009 to get off the compound."  ECF No. 1, PageID.6.  Robert Beaulieu testified that "when somebody is honestly being threatened, they have names, they have numbers, they have specific instances that have occurred.  And in this particular case, there was not that.  Those are things that we would place in there, yeah, that he had valid - - you know, he brought - - brought forth valid information."  ECF No. 158-7, PageID.1012.  Robert Beaulieu indicated that Plaintiff's claim of a threat and the letter allegedly from MS-13 gang members were both vague.  PageID.1013.  Robert Beaulieu had not heard of the MS-13 gang.  *Id.*  Robert Beaulieu's role was to provide information to the SCC.  In Robert Beaulieu's opinion, there was no threat.  Plaintiff simply wanted  a transfer out of the Upper Peninsula of Michigan.  PageID.1015.  Robert Beaulieu explained:

I find it odd that he didn't - - he wasn't able to recognize anybody that he so-called believed the MS-13 gang was after him. He - - Coming from two different facilities, he should know or he would have recollection if there were somebody out there that wanted to cause him harm, that he would know a name and number, or at least a name or a description - - or a description of some sort. He was not able to provide anything.

PageID.1016. Robert Beaulieu further stated:

No. Again, individuals don't send - - if they want to harm somebody, they are going to harm somebody. They don't give us any type of notice, letting them know that, hey, I am going to harm this guy, and especially putting a label on a particular group, whether it is present or not present, gives us - - you know, if somebody is stabbed, well, then that would give us a way to look into the matter, whether it is formal state police investigation or a facility lit. I don't think anybody is going to put themselves out there with that type of information.

PageID. 1017.

The SCC was comprised of Defendants Nadeau and Mansfield. Defendant Nadeau testified that she had no knowledge of MS-13 gang activity at the prison, that it is very strange that a Security Threat Group would send a letter announcing a "hit" or a "kill." The fact that the letter indicated that the only prisons Plaintiff could not be placed were in Upper Peninsula prisons was suspicious, since no downstate prisons were listed. Prisoners routinely try to transfer out of the Upper Peninsula so that they can be closer to family members for visitation purposes. ECF No. 158-3, PageID.982. Defendant Nadeau explained further:

He could - - couldn't give any information to try to help substantiate that, you know. Sometimes prisoners will say, well, I was threatened at a specific time, in a specific location. We could review cameras to see if we could see two individuals together. We try to exhaust all possible claims, but if there is nothing there, then we deny the protection request.

PageID.983. Defendant Mansfield stated that the fact that Plaintiff could not go to Upper Peninsula prisons was a red flag. Before granting protection to a prisoner, the information must be verified. Defendant Mansfield explained that he can only investigate the information provided by the prisoner requesting protection. Plaintiff's allegations were not enough to verify his claims because he provided no information. ECF No. 158-6. PageID.1005. Defendant Mansfeld explained:

> He was transferred because of an alleged assault. And he alleged it was MS-13. What you have in front of you, those are allegations. They are not verified. And that's the problem that we have with protection requests. They need to be verified. . . .
>
> When a prisoner alleges that he has been assaulted and can't tell us anything about the person that assaulted him, then there is not a whole lot that we can go on. If you are really afraid in prison, you are going to tell us every detail you can. And those are the prisoners that we get that come in and tell us every detail of why they are afraid, what the guy is wearing, where he locks, who he is, where he -- where he talked to him.

*Id.* Defendants Nadeau and Mansfield issued a Michigan Department of Corrections Voluntary Classification To Protective Segregation form dated September 30, 2009, denying Plaintiff's request for protection. "Request Denied. Information provided by prisoner is vague. No prisoners identified. Returned to G.P. L. II." ECF. No. 161-9, PageID.1144. Plaintiff filed a grievance URF 09-10-2740-03B on October 8, 2009. On October 8, 2009, Defendant Swift and Defendant Robinson denied the grievance. The Step I grievance response stated:

> Mr. Richardson requested protection. The appropriate investigation and reports were completed. He was interviewed by URF SCC and the request was denied. All aspects of Policy and Procedure have been satisfied. There is no violation found in this complaint. If at any time Mr. Richardson's circumstances change, or he has additional information to submit that substantiate a need for protection he is advised to contact staff immediately.

ECF. No. 1, PageID.15.

On October 24, 2009, Plaintiff alleged that he was stabbed in the back of his right shoulder. Plaintiff received a two inch laceration that was cleaned and bandaged. ECF No. 161-11, PageID.1154. Sergeant Beaulieu investigated the incident. He reviewed the camera, but he could not see any incident. Sergeant Beaulieu's attempts to find prisoners that went by the name of "Ghost" and "Llldeable" were unsuccessful. Sergeant Beaulieu concluded that he could neither confirm nor deny Plaintiff's claim. Michigan Department of Corrections Protective Segregation Investigation Report, ECF No. 161-12, PageID.1156.

On October 27, 2009, Plaintiff was placed in temporary segregation, and on November 2, 2009, Plaintiff was transferred to the Newberry Correctional Facility. Plaintiff asserts that he should not have been transferred to Newberry because the gang threat letter included Newberry as one of the prisons where Plaintiff would be assaulted. Plaintiff was transferred to the Alger Correctional Facility on November 8, 2009.[2]  While at Alger, Plaintiff complains that Defendants attempted to transfer him back to Newberry. Plaintiff refused to transfer to Newberry and remained at Alger until he was transferred to the Baraga Correctional Facility in 2012.

In the opinion of the undersigned, Plaintiff has not shown that any Defendant acted with deliberate indifference to Plaintiff's request for protection. Defendants investigated Plaintiff's claims by attempting to verify the existence of the MS-13 gang at the prison and the validity of the threatening letter. Defendants considered the lack of information provided by Plaintiff and the fact that Plaintiff's inability to provide any information prevented them from undertaking any significant investigation because they had nothing to investigate. Plaintiff failed to identify any characteristic of the prisoners who allegedly threatened him and, similarly, failed to identify any characteristic of

---

[2]Plaintiff's claims involving his protection requests while at Alger have been previously dismissed by this Court.

the prisoners who allegedly assaulted him.  The review of the cameras in both instances resulted in

no evidence that Plaintiff was assaulted by a prisoner.   In fact, looking at the evidence objectively,

Plaintiff has presented no evidence that the assault at Kinross was related to any alleged MS-13

threat.   Plaintiff has completely failed to support his claims that prisoners from the MS-13 gang

threatened him or that he made store purchases to pay gang members for protection.   The only

evidence of the MS-13 gang threat was the letter that was sent to the Chippewa Investigator, that

each Defendant characterized as suspicious and not believable.  The Defendants' conduct, however,

may only be judged at the time that they made their decisions, without the benefit of hindsight, based

upon the information that they had, and the information that they could obtain through an

investigation.  Each Defendant testified that they were unaware of MS-13 gang presence at any of

the prisons in the Upper Peninsula.  Defendant Alger Warden Bauman further explained that

although she was aware of the MS-13 gang, she knew "very little" about the gang.  PageID.1023.

Defendant Bauman was not aware of any MS-13 gang member presence currently or at any time in

the past.  *Id.*  This was also true, as each Defendant testified, for Kinross, Chippewa and Newberry.

Plaintiff has set forth no evidence that rebuts Defendants' claim that there existed no MS-13 gang

presence at these facilities.  Moreover, Defendants have shown that they investigated and considered

the alleged threat to Plaintiff and that in each case their investigation could not identify a threat

requiring Plaintiff to enter protective custody or be transferred to a down-state prison.  Plaintiff has

not come forth with any evidence to establish that any Defendant acted with deliberate indifference

to his safety in considering his requests for protection.  At best, based upon hindsight, Plaintiff can

show that Defendants may have been negligent, but Plaintiff has come forth with no evidence that

can show that any Defendant was deliberately indifferent to Plaintiff's requests for protection.   In

the opinion of the undersigned, Plaintiff has failed to support his claim that each Defendant was

deliberately indifferent to a substantial risk of harm to Plaintiff that could support an Eighth Amendment failure to protect claim.

Similarly, Plaintiff's assertion that he should not have been transferred to Newberry in 2009, or that a transfer to Newberry in 2011, should not have been attempted, fails to support any violation of Constitutional law. In the opinion of the undersigned, if the Court concludes that Plaintiff cannot support a claim that his rights were violated when Defendants failed to place him in protective custody or transfer him to a downstate prison in 2009, Plaintiff's claim that he could not be housed at the Newberry Correctional Facility must also fail.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 157) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


Dated:   August 24, 2016                            */s/ Timothy P. Greeley*
                                         TIMOTHY P. GREELEY
                                         UNITED STATES MAGISTRATE JUDGE